# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| TERRY BROWN,<br><br>    Plaintiff,<br><br>    v.<br><br>NANCY A. BERRYHILL, Acting Commissioner of Social Security,<br><br>    Defendant. | NO. C17-108-JPD<br><br><br>ORDER |

Plaintiff Terry Brown appeals the final decision of the Commissioner of the Social Security Administration ("Commissioner") that denied his application for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-83f, after a hearing before an administrative law judge ("ALJ"). For the reasons set forth below, the Court AFFIRMS the Commissioner's decision.

    I.    FACTS AND PROCEDURAL HISTORY

On his protective filing date, Plaintiff was a 56-year-old man with a high school diploma and a two-year college degree in technical illustration. Administrative Record ("AR") at 549-50. His past work experience includes employment as a electronics purchasing agent, assembler, and parts stocker; car salesperson; retail clerk; bank loan processor; and food bank aide. AR at 184, 196. Plaintiff was last gainfully employed in 2009. AR at 196.

ORDER - 1

In November 2010, Plaintiff protectively filed a claim for SSI payments, alleging an onset date of April 17, 2009. AR at 161-67, 230. Plaintiff asserts that he is disabled due to back pain and depression. *See, e.g.*, AR at 222.

The Commissioner denied Plaintiff's claim initially and on reconsideration. AR at 96-103, 107-14. Plaintiff requested a hearing, which took place on March 1, 2012. AR at 39-66. On March 19, 2012, the ALJ issued a decision finding Plaintiff not disabled and denied benefits based on his finding that Plaintiff could perform his past relevant work, as well as specific job existing in significant numbers in the national economy. AR at 22-34. Plaintiff's administrative appeal of the ALJ's decision was denied by the Appeals Council, AR at 1-6, making the ALJ's ruling the "final decision" of the Commissioner as that term is defined by 42 U.S.C. § 405(g).

Plaintiff sought judicial review in U.S. District Court for the Western District of Washington, which granted the parties' stipulation to reverse the ALJ's decision and remand for further administrative proceedings. AR at 596, 602-03. The ALJ held a second hearing on May 14, 2015. AR at 534-65. On June 26, 2015, the ALJ found Plaintiff not disabled. AR at 477-490. The Appeals Council found no reason to assume jurisdiction (AR at 464-73), and Plaintiff timely filed a complaint in this court. Dkt. 1, 3.

## II. JURISDICTION

Jurisdiction to review the Commissioner's decision exists pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3).

## III. STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), this Court may set aside the Commissioner's denial of social security benefits when the ALJ's findings are based on legal error or not supported by substantial evidence in the record as a whole. *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 (9th

Cir. 2005). "Substantial evidence" is more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989). The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving any other ambiguities that might exist. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). While the Court is required to examine the record as a whole, it may neither reweigh the evidence nor substitute its judgment for that of the Commissioner. *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002). When the evidence is susceptible to more than one rational interpretation, it is the Commissioner's conclusion that must be upheld. *Id.*

## IV. EVALUATING DISABILITY

As the claimant, Mr. Brown bears the burden of proving that he is disabled within the meaning of the Social Security Act (the "Act"). *Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999) (internal citations omitted). The Act defines disability as the "inability to engage in any substantial gainful activity" due to a physical or mental impairment which has lasted, or is expected to last, for a continuous period of not less than twelve months. 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). A claimant is disabled under the Act only if his impairments are of such severity that he is unable to do his previous work, and cannot, considering his age, education, and work experience, engage in any other substantial gainful activity existing in the national economy. 42 U.S.C. §§ 423(d)(2)(A); *see also Tackett v. Apfel*, 180 F.3d 1094, 1098-99 (9th Cir. 1999).

The Commissioner has established a five step sequential evaluation process for determining whether a claimant is disabled within the meaning of the Act. *See* 20 C.F.R. §§ 404.1520, 416.920. The claimant bears the burden of proof during steps one through four. At

ORDER - 3

step five, the burden shifts to the Commissioner. *Id.* If a claimant is found to be disabled at any step in the sequence, the inquiry ends without the need to consider subsequent steps. Step one asks whether the claimant is presently engaged in "substantial gainful activity." 20 C.F.R. §§ 404.1520(b), 416.920(b).[1] If he is, disability benefits are denied. If he is not, the Commissioner proceeds to step two. At step two, the claimant must establish that he has one or more medically severe impairments, or combination of impairments, that limit his physical or mental ability to do basic work activities. If the claimant does not have such impairments, he is not disabled. 20 C.F.R. §§ 404.1520(c), 416.920(c). If the claimant does have a severe impairment, the Commissioner moves to step three to determine whether the impairment meets or equals any of the listed impairments described in the regulations. 20 C.F.R. §§ 404.1520(d), 416.920(d). A claimant whose impairment meets or equals one of the listings for the required twelve-month duration requirement is disabled. *Id.*

When the claimant's impairment neither meets nor equals one of the impairments listed in the regulations, the Commissioner must proceed to step four and evaluate the claimant's residual functional capacity ("RFC"). 20 C.F.R. §§ 404.1520(e), 416.920(e). Here, the Commissioner evaluates the physical and mental demands of the claimant's past relevant work to determine whether he can still perform that work. 20 C.F.R. §§ 404.1520(f), 416.920(f). If the claimant is able to perform his past relevant work, he is not disabled; if the opposite is true, then the burden shifts to the Commissioner at step five to show that the claimant can perform other work that exists in significant numbers in the national economy, taking into consideration the claimant's RFC, age, education, and work experience. 20 C.F.R. §§ 404.1520(g),

---

[1] Substantial gainful activity is work activity that is both substantial, i.e., involves significant physical and/or mental activities, and gainful, i.e., performed for profit. 20 C.F.R. § 404.1572.

416.920(g); *Tackett*, 180 F.3d at 1099, 1100. If the Commissioner finds the claimant is unable to perform other work, then the claimant is found disabled and benefits may be awarded.

## V. DECISION BELOW

On June 26, 2015, the ALJ found:

1. The claimant has not engaged in substantial gainful activity since November 18, 2010, the application date.

2. The claimant's back disorder, obesity, and depression are severe impairments.

3. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.

4. The claimant has the RFC to perform medium work as defined in 20 C.F.R. § 416.967(c). The claimant can have frequent interaction with the general public, co-workers, or supervisors. His job tasks should not include directing others. He is able to deal with routine workplace stressors and to make routine workplace decisions generally associated with occupations with an specific vocational preparation ("SVP") of 1-3. He is able to understand, remember, and carry out simple and detailed tasks and instructions generally required by occupations with an SVP of 1-3.

5. The claimant is capable of performing past relevant work as a retail sales clerk, and, in the alternative, can perform other jobs that exist in significant numbers in the national economy.

6. The claimant has not been under a disability, as defined in the Act, since November 18, 2010, the date the application was filed.

AR at 479-489.

## VI. ISSUES ON APPEAL

The principal issues on appeal are:

1. Whether the ALJ erred in discounting Plaintiff's subjective testimony; and

2. Whether the ALJ erred in assessing the medical opinion evidence;

Dkt. 14 at 1.

# VII. DISCUSSION

A. <u>The ALJ did not err in discounting Plaintiff's subjective testimony.</u>

The ALJ discounted Plaintiff's subjective testimony for several reasons: (1) the medical evidence does not corroborate Plaintiff's description of his physical or mental limitations; (2) Plaintiff's activities demonstrate that he is able to perform activities despite claims of low energy; and (3) the evidence shows that Plaintiff lacked the motivation, rather than the ability, to work. AR at 483-85. Plaintiff argues that these reasons are not legally sufficient.

1. *Legal standards*

As noted above, it is the province of the ALJ to determine what weight should be afforded to a claimant's testimony, and this determination will not be disturbed unless it is not supported by substantial evidence. A determination of whether to accept a claimant's subjective symptom testimony requires a two-step analysis. 20 C.F.R. §§ 404.1529, 416.929; *Smolen*, 80 F.3d at 1281. First, the ALJ must determine whether there is a medically determinable impairment that reasonably could be expected to cause the claimant's symptoms. 20 C.F.R. §§ 404.1529(b), 416.929(b); *Smolen*, 80 F.3d at 1281-82. Once a claimant produces medical evidence of an underlying impairment, the ALJ may not discredit the claimant's testimony as to the severity of symptoms solely because they are unsupported by objective medical evidence. *Bunnell v. Sullivan*, 947 F.2d 341, 343 (9th Cir. 1991) (en banc); *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1988). Absent affirmative evidence showing that the claimant is malingering, the ALJ must provide "clear and convincing" reasons for rejecting the claimant's testimony.[2] *Burrell v. Colvin* 775 F.3d 1133, 1136-37 (9th Cir. 2014) (citing

---

[2] In Social Security Ruling ("SSR") 16-3p, the Social Security Administration rescinded SSR 96-7p, eliminated the term "credibility" from its sub-regulatory policy, clarified that "subjective symptom evaluation is not an examination of an individual's character[,]" and indicated it would more "more closely follow [its] regulatory language regarding symptom

*Molina v. Astrue*, 674 F.3d 1104, 1112 (9th Cir. 2012)). *See also Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007).

When evaluating a claimant's subjective symptom testimony, the ALJ must specifically identify what testimony is not credible and what evidence undermines the claimant's complaints; general findings are insufficient. *Smolen*, 80 F.3d at 1284; *Reddick*, 157 F.3d at 722. The ALJ may consider "ordinary techniques of credibility evaluation," including a claimant's reputation for truthfulness, inconsistencies in testimony or between testimony and conduct, daily activities, work record, and testimony from physicians and third parties concerning the nature, severity, and effect of the alleged symptoms. *Thomas*, 278 F.3d at 958-59 (citing *Light v. Social Sec. Admin.*, 119 F.3d 789, 792 (9th Cir. 1997)).

2.  *Motivation to work*

The ALJ cited evidence showing that Plaintiff lacked motivation to work, based on his personal preferences disfavoring work, as well as his interest in maintaining eligibility for benefits programs. AR at 485. Plaintiff argues that his engagement with Division of Vocational Rehabilitation ("DVR") services indicates that he desired "to lead a normal life" rather than that he lacked motivation to work. Dkt. 14 at 5. But Plaintiff does not address the breadth of evidence cited by the ALJ showing an overall lack of motivation to work.

Specifically, the ALJ cited a note related to a DVR session in which Plaintiff express "[a]nger . . . directed at those who expect that he work, and work itself (which per him is not a force in his identity)[.]" AR at 309. The ALJ noted that Plaintiff's DVR counselors recommended that he continue services with DVR — despite Plaintiff's "frustrat[ion] by

---

evaluation." SSR 16-3p, 2016 WL 1119029 (Mar. 16, 2016). However, this change is effective March 28, 2016, and not applicable to the June 2015 ALJ decision in this case. *See* SSR 16-3p, 2016 WL 1237954 (Mar. 24, 2016). The Court, moreover, continues to cite to relevant case law utilizing the term "credibility."

expectations he perceives that are placed upon him (work as an example)" and "[f]ear[] of benefit loss implications" — which suggests that they believed he was capable of working. AR at 485 (citing AR at 312). The ALJ also highlighted that Plaintiff reported to his therapist that he had worked with DVR and wanted to return to school, but his Social Security benefits lawyer "advised him not to work or go to school or he will jeopardize his case." AR at 428.

The ALJ also cited evidence showing that Plaintiff expressed an interest in prioritizing receipt of his state disability benefits and/or Social Security retirement benefits over earning wages. AR at 485 (citing AR at 778 (noting that Plaintiff reported feeling "grateful for recent mon[ies] from DSHS that relieves the stress and uncertainty he was experiencing. Consequently he will no longer look for work, he thinks he can coast until his birthday in a year where he will get [Social Security] even if he doesn't get SSI"), 790 ("[Plaintiff] turned down a Fred Meyer job offer because it would be for more than t[h]an his [state disability] subsidy allows"), 794 ("[Plaintiff] reports feeling 'content' and unwilling to exert himself or worry about finding a job. 'in 2 yrs I'll get Social Security – I think I can wait.'"), 822 (noting that Plaintiff reports that "DSHS has reinstated cash benefits" and he "has flirted with the idea of working but as long as he has some income he doesn't want to")).

The ALJ further noted that Plaintiff's providers on multiple occasions cited low motivation to work — as opposed to disabling impairments — as a factor in his unemployment. AR at 485 (citing AR at 396, 719, 771).

The ALJ's reasoning is supported by substantial evidence, and constitutes a clear and convincing reasons to discount Plaintiff's allegation of disability. *See Osenbrock v. Apfel*, 240 F.3d 1157, 1165-67 (9th Cir. 2001) (finding that an ALJ properly discounted a claimant's testimony due to evidence of self-limitation and lack of motivation); SSR 82-61, 1982 WL 31387, at *1 (Jan. 1, 1982) ("A basic program principle is that a claimant's impairment must

ORDER - 8

be the primary reason for his or her inability to engage in substantial gainful work.").

3.  *Objective evidence*

Plaintiff suggests that the ALJ's summary of the medical evidence was not sufficient to explain why he discounted Plaintiff's testimony, because the ALJ did not explain which part of his testimony was inconsistent with the medical evidence. Dkt. 14 at 3. Plaintiff is mistaken. The ALJ explained that Plaintiff inconsistently reported back pain and the objective evidence shows only mild findings, and that Plaintiff had scant treatment for back pain. AR at 483. The ALJ also pointed out how many of Plaintiff's mental findings were also normal, and that although he reported medication side effects at the hearing, he never reported them to providers. AR at 483-84. These specific findings distinguish this case from *Brown-Hunter v. Colvin*, 806 F.3d 487, 494 (9th Cir. 2015), which Plaintiff relied upon to argue that the ALJ's reasoning was insufficient. The ALJ properly discounted Plaintiff's testimony as inconsistent with the medical record. *Carmickle v. Comm'r of Social Sec. Admin.*, 533 F.3d 1155, 1161 (9th Cir. 2008) ("Contradiction with the medical record is a sufficient basis for rejecting the claimant's subjective testimony.").

4.  *Activities*

The ALJ also cited Plaintiff's activities as a grounds for discounting his subjective testimony. AR at 484-85. The ALJ described Plaintiff's many independent activities as demonstrating that he retains the ability to persist in performing activities "despite his claims of low energy." AR at 485. Because the ALJ explained how the cited activities contradicted Plaintiff's allegations, the ALJ's reasoning is legally sufficient. *See Orn v. Astrue*, 495 F.3d 625, 639 (9th Cir. 2007) (activities may undermine credibility where they (1) contradict the claimant's testimony or (2) "meet the threshold for transferable work skills").

//

ORDER - 9

B. <u>The ALJ did not err in discounting medical opinions.</u>

The ALJ discounted opinions provided by examining providers Gerald Cavenee, Ph.D.; Kathleen Andersen, M.D.; and David Widlan, Ph.D.; the State agency reviewing psychologists; and treating counselor Don Turner, M.A., MHP, LMHC. The Court will address each disputed opinion in turn.

1. *Legal standards*

As a matter of law, more weight is given to a treating physician's opinion than to that of a non-treating physician because a treating physician "is employed to cure and has a greater opportunity to know and observe the patient as an individual." *Magallanes*, 881 F.2d at 751; *see also Orn*, 495 F.3d at 631. A treating physician's opinion, however, is not necessarily conclusive as to either a physical condition or the ultimate issue of disability, and can be rejected, whether or not that opinion is contradicted. *Magallanes*, 881 F.2d at 751. If an ALJ rejects the opinion of a treating or examining physician, the ALJ must give clear and convincing reasons for doing so if the opinion is not contradicted by other evidence, and specific and legitimate reasons if it is. *Reddick*, 157 F.3d at 725. "This can be done by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Id.* (citing *Magallanes*, 881 F.2d at 751). The ALJ must do more than merely state his/her conclusions. "He must set forth his own interpretations and explain why they, rather than the doctors', are correct." *Id.* (citing *Embrey v. Bowen*, 849 F.2d 418, 421-22 (9th Cir. 1988)). Such conclusions must at all times be supported by substantial evidence. *Reddick*, 157 F.3d at 725.

The opinions of examining physicians are to be given more weight than non-examining physicians. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). Like treating physicians, the uncontradicted opinions of examining physicians may not be rejected without clear and

convincing evidence. *Id.* An ALJ may reject the controverted opinions of an examining physician only by providing specific and legitimate reasons that are supported by the record. *Bayliss,* 427 F.3d at 1216.

Opinions from non-examining medical sources are to be given less weight than treating or examining doctors. *Lester*, 81 F.3d at 831. Although an ALJ generally gives more weight to an examining doctor's opinion than to a non-examining doctor's opinion, a non-examining doctor's opinion may nonetheless constitute substantial evidence if it is consistent with other independent evidence in the record. *Thomas*, 278 F.3d at 957; *Orn*, 495 F.3d at 632-33.

An ALJ may also consider lay-witness sources, such as testimony by nurse practitioners, physicians' assistants, and counselors. *See* 20 C.F.R. § 404.1513. Such testimony regarding a claimant's symptoms or how an impairment affects his/her ability to work is competent evidence, and cannot be disregarded without comment. *Dodrill v. Shalala*, 12 F.3d 915, 918-19 (9th Cir. 1993). If an ALJ chooses to discount testimony of a lay witness, he must provide "reasons that are germane to each witness," and may not simply categorically discredit the testimony. *Dodrill,* 12 F.3d at 919.

2. *Dr. Cavenee*

Dr. Cavenee examined Plaintiff in August 2010, without reviewing any records. AR at 245-58. He found that Plaintiff had marked and severe functional limitations, and that he is "unable to work at all due to severe [mental health] concerns." AR at 247-48.

The ALJ first noted that Dr. Cavenee's opinion was rendered months before Plaintiff applied for SSI. AR at 485. The ALJ then found Dr. Cavenee's conclusions to be inconsistent with his own mental status examination findings, as well as other examination findings of record, and inconsistent with Plaintiff's "robust independent daily activities[,]" which include school and DVR services. AR at 485-86.

ORDER - 11

Plaintiff argues that the ALJ did not explain which portions of the record were inconsistent with Dr. Cavenee's opinion (Dkt. 14 at 10), but Plaintiff is mistaken: the ALJ referred to normal findings upon mental status examination, as well as Plaintiff's activities. *See* AR at 485-86. Inconsistency with the record is a legitimate reason to discount a medical opinion. *See Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008) (inconsistency with the record properly considered by ALJ in rejection of physician's opinions).

Plaintiff goes on to argue that Dr. Cavenee's opinion is consistent with other evidence in the record and supported by his own observations (Dkt. 14 at 11-12), but even if this is true, it does not show error in the ALJ's stated reasoning.

Lastly, Plaintiff argues that the ALJ did not explain how the cited activities were inconsistent with the limitations assessed by Dr. Cavenee. Dkt. 14 at 12. But the ALJ cited activities that are inconsistent with portions of Dr. Cavenee's opinion on its face: Dr. Cavenee found that Plaintiff had severe limitations in his ability to perform effectively in a work setting, yet, as noted by the ALJ, Plaintiff engaged with DVR services, with the support of his mental health providers. AR at 486 (citing AR at 312, 763). Plaintiff's DVR referrals and participation are inconsistent with Dr. Cavenee's conclusions, and this inconsistency supports the ALJ's assessment of Dr. Cavenee's opinion. *See Rollins v. Massanari*, 261 F.3d 853, 856 (9th Cir. 2001) (affirming an ALJ's rejection of a treating physician's opinion that was inconsistent with the claimant's level of activity).

3. *Drs. Andersen and Widlan, and Mr. Turner*

The ALJ discounted the opinions of Drs. Andersen (AR at 460-65) and Widlan (AR at 325-33, 797-16), and Mr. Taylor (AR at 393-99, 453, 717-25) for similar reasons: the ALJ discounted these opinions to the extent that the providers relied upon Plaintiff's self-report as support for their conclusions, because, as discussed *supra*, the ALJ found that Plaintiff's self-

ORDER - 12

report was not entirely reliable. AR at 486-87. The ALJ noted that parts of Dr. Andersen's reports were based on her own observations, and he credited those portions (AR at 486-87), and found that Dr. Widlan's and Mr. Turner's opinions were also inconsistent with the record, which showed normal mental status examinations, improvement, and varied daily activities. AR at 487.

Plaintiff argues that these providers did not rely on his self-report to the exclusion of their own observations. Dkt. 14 at 10. This may be true, and the ALJ emphasized which portions of Dr. Andersen's opinion were based on her own observations. AR at 486-87. But the ALJ also emphasized which portions of the opinions were not based on independent observations: he cited portions of Dr. Widlan's opinions that explicitly referenced reliance on self-report, and noted which portions of the opinions were inconsistent with the objective evidence and the providers' own observations, which suggests that the providers relied on self-report. AR at 487. The ALJ's detailed assessment of the degree to which the providers relied on Plaintiff's self-report demonstrates that the ALJ appropriately considered whether the providers' opinions were based on objective evidence, and did not err in discounting the opinions to the extent they relied on non-credible self-report. *See Bray v. Comm'r of Social Sec. Admin.*, 554 F.3d 1219, 1228 (9th Cir. 2009).

The ALJ also noted that Dr. Widlan's opinions do not describe the most that Plaintiff is capable of doing, which renders them less useful to the ALJ's RFC determination. AR at 487. The ALJ highlighted that although Mr. Turner suggested that Plaintiff's unemployment was due at least in part to lack of motivation to work, his opinions did not reflect this reasoning. *Id.* These reasons constitute additional specific, legitimate, and germane reasons to discount the opinions of Dr. Widlan and Mr. Turner.

Although Plaintiff emphasizes that these challenged opinions are consistent with each

ORDER - 13

other (Dkt. 14 at 11), this argument does not establish error in the ALJ's decision and at most posits an alternative interpretation of the evidence. And to the extent that Plaintiff persuasively argues that the ALJ did not explain which portions of Dr. Widlan's opinions are inconsistent with Plaintiff's activities (Dkt. 14 at 12), this error is harmless in light of the ALJ's numerous other valid reasons to discount the opinions.

Accordingly, the ALJ's assessment of the opinions of Drs. Andersen and Widlan and Mr. Turner is affirmed.

4. *State agency psychologists*

The ALJ gave some weight to the opinions of the State agency psychologists (AR at 68-80, 82-95), and indicated that he accommodated their opined social limitations by restricting Plaintiff to "frequent" interaction with the public, co-workers, and supervisors. AR at 486. The ALJ found that this limitation was also consistent with Plaintiff's "activities and abilities." AR at 486.

Plaintiff argues that because the other medical opinion evidence, particularly the evidence that was more recent than the State agency opinions, showed that he was more limited than found by the State agency psychologists, the State agency opinions do not constitute substantial evidence. Dkt. 14 at 14. But, as explained *supra*, the ALJ provided sufficient reasons to discount the evidence that Plaintiff cites as inconsistent with the State agency opinions, and thus Plaintiff has not shown that the ALJ erred in discounting those opinions. Furthermore, as noted by the Commissioner, the ALJ considered the State agency opinions with reference to Plaintiff's longitudinal treatment record and activities, such that even though the reviewing psychologists did not have access to the entire record, the ALJ's assessment considered the opinions in the context of the entire record. Dkt. 20 at 10. Plaintiff did not respond to this argument in his reply brief. Dkt. 21.

ORDER - 14

Plaintiff has not shown that the State agency opinions are inconsistent with the entire record, such that they do not constitute substantial evidence. *See Morgan v. Comm'r of Social Sec. Admin.*, 169 F.3d 595, 600 (9th Cir. 1999) ("Opinions of a nonexamining, testifying medical advisor may serve as substantial evidence when they are supported by other evidence in the record and are consistent with it." (citing *Andrews*, 53 F.3d at 1041)). The ALJ explicitly identified which portions of the treatment record and Dr. Andersen's opinion he found to support the State agency opinions. AR at 486. Accordingly, the ALJ did not err in assessing the State agency opinions.

## VIII. CONCLUSION

The role of this Court is limited. As noted above, the ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving any other ambiguities that might exist. *Andrews*, 53 F.3d at 1039. When the evidence is susceptible to more than one rational interpretation, it is the Commissioner's conclusion that must be upheld. *Thomas,* 278 F.3d at 954. While it may be possible to evaluate the evidence as Plaintiff suggests, it is not possible to conclude that Plaintiff's interpretation is the only rational interpretation.

For the reasons stated herein, the Court AFFIRMS the Commissioner's decision.

DATED this 17th day of August, 2017.

JAMES P. DONOHUE
Chief United States Magistrate Judge